IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK E. MARTIN,

                    Plaintiff,                        Civil No. 04-876-AS

         v.                                FINDINGS AND
                                                   RECOMMENDATION

JoANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.
_____

ASHMANSKAS, Magistrate Judge:

      Plaintiff Jack Martin ("Martin") filed this action under section 205(g) of the Social Security

Act (the "Act") as amended, 42 U.S.C. §405(g), to review the final decision of the Commissioner

of Social Security (the "Commissioner") who denied him social security disability insurance benefits

("Benefits").

PROCEDURE

      On or about June 22, 2000, Martin filed an application for Benefits alleging an onset date

of June 20, 2000.  The application was denied initially and by the Administrative Law Judge (the

"ALJ") after a hearing.  The Appeals Council denied review and the ALJ's decision became the final

decision of the Commissioner.

FACTS

Martin is 44 years old.  He graduated from high school and attended one to two years of college.  His past relevant work experience includes remodeler, maintenance worker and delivery truck driver.  Martin has not been involved in a successful work attempt since June 2000.  Martin alleges disability because of high blood pressure, diabetes and hip and spine impairments.  Martin meets the insured status requirements entitling him to Benefits through December 31, 2005.

**Testimony**

Martin has constant low-back pain.  He uses a back machine and heat to decrease the pain. Standing and sitting for a long period of time aggravates his back pain and reclining does not seem to help.  The pain in his legs has decreased considerably since the surgery so that he cries out in pain only three or four times a day rather than six or eight times an hour.  Martin's legs swell up when he doesn't elevate them.  When this occurs, he can't get any shoes on and the bottom of his feet are really tender.

Martin spends most of his time in his recliner with his feet elevated.  He pets his dog and talks with his wife.  When he attempts to do chores around the house, he takes an extra painkiller and waits for that to kick in before he starts to work.  Generally, he will be laid up for a day or two afterwards.  His chores are picking up his dog's poop, playing with the dog and taking her for short walks.  He also picks up his clothes using a grabbing device so he doesn't have to bend over.  He is able to pick up and carry a 12-pack of soda but then his wife gets mad at him.  He drove from Corvallis, Oregon,  to Medford, Oregon, but had to stop three time so that he could move around.

Martin testified that he has trouble with reading because of blurred vision but that he has no

trouble writing. He tends to forget a lot of things and it takes him longer to do things than it used to. The constant pain really gets to him, especially at night. He has over-medicated on occasion just to get some pain relief.

## Medical Evidence

Martin had his left hip replaced in September 1996. The surgery was successful and by 2000, Martin had virtually no residual effects. However, he was cautioned to avoid impact, running, jumping and heavy lifting.[1] Martin was diagnosed with diabetes and was placed on a meal plan in July 1997 intended to help him lose weight and control his diabetes.

In January 1998, D. Randall Wolfe, M.D., an ophthalmologist, examined Martin at the request of Lawrence R. Barnes, M.D., Martin's then treating physician, who was concerned about diabetic complications. Dr. Wolfe discovered slight myopia and a slight stigmatism in the left eye but not enough to require glasses. Martin's corrected vision was 20/20 with no diabetic changes.

On May 21, 1999, Martin injured his back while moving a table. He had low-back and right-buttock pain which he described as dull, aching and constant and a seven on a scale of one to ten. Dr. Barnes diagnosed a back strain and sciatica, prescribed an anti-inflammatory and pain medication and referred Martin to physical therapy. Martin improved with physical therapy, was able to continue work with only tightening of the muscles along the spine and resumed his recreational activities.

In July 1999, Martin complained to Dr. Barnes about increased stress over the past two years. Martin felt that he should consider another job and pursue retraining based on the continuing pain

---

[1]On January 5, 2001, Robert E. Steele noted that, as a result of his hip replacement, Martin was permanently restricted to occasional lifting of 75 pounds and frequent lifting of 50 pounds and that he should avoid walking on rough terrain, running and jumping.

from his left hip replacement.

On November 23, 1999, Martin reinjured his back by overextending. Dr. Barnes again diagnosed a back strain and referred Martin for another round of physical therapy. He released Martin to full-time work on November 29, 1999, with no lifting over 20 pounds and no stooping, bending, crawling or twisting.

In January 2000, Dr. Barnes referred Martin to Donald R. Olson, M.D., who diagnosed probable spinal stenosis with possible L-4 nerve root involvement and definite evidence of dermatome abnormality at S-1 on the left side. Dr. Olson recommended an aggressive back stabilization program and pool therapy as well as an MRI and prescribed an anti-inflammatory and pain medication. The MRI revealed a "small caliber spinal canal, secondary to anatomic configuration. At L4-5, this is further narrowed by ligamentum flavum hypertophy and a slight broad-based disc bulge, producing moderate central canal stenosis at this level, without focal encroachment." Transcript at 238.

Dr. Barnes altered his diagnosis to spinal stenosis in March 2000 based on the MRI and continued pain which remained primarily in Martin's back but also shot down Martin's right leg and buttock. He referred Martin to physical therapy for pelvic traction and pool therapy and limited Martin to full-time sedentary work[2] with no ladder climbing on March 15, 2000. Dr. Barnes increased that limitation on April 1, 2000, to no more than three hours a day. In early May, 2000, Dr. Barnes noted that Martin suffered from depression to some degree. The next month, Dr. Barnes prescribed a TENS unit for Martin's back pain and referred Martin to Maurice Collada, M.D., for

---

[2]Sedentary was defined as "lift or carry 10 pounds maximum, minimal stand/walk, bend/stoop, push/pull as necessary to carry out job duties." Transcript at 221.

back surgery.

On August 10, 2000, Dr. Collada examined Martin. At this time, Martin was experiencing constant pain in his low back and both extremities at a level of seven out of ten. The pain did not increase with activity but did improve with rest. Dr. Collada found that Martin had "some degenerative disc changes noted on his lumbosacral x-rays, however, neurologically he is looking very well with full strength and a slight decrease in sensation of his left lower extremity following an L5-S1 dermatomal pattern." Transcript at 251. After reviewing the MRI, which revealed congenitally short pedicles, Dr. Collada recommended a myelogram to further determine the appropriateness of surgery. The myelogram, performed on October 2, 2000, revealed a:

> developmentally small lumbar spinal canal from L3 to the sacrum. Spinal stenosis is maximum at L4-5 where there is also a bulge of the annulus fibrosis. The dorsal lateral and ligamentous structures are the major contributor to the spinal stenosis. There is no herniated disc or neural foraminal stenosis.

Transcript at 199. Dr. Collada performed a "left L4-5 hemilaminectomy, generous, with aggressive lateral recess decompression and foraminotomies," on November 6, 2000. Transcript at 245.

Thomas Lissman, M.D., examined Martin on December 2, 2000, at the request Oregon's Vocational Rehabilitation Division. Martin advised Dr. Lissman that he had applied for social security benefits based solely on his physical problems and denied having any mental health difficulties. Dr. Lissman was unable to uncover any evidence of significant mental illness or impairment.

Martin's current treating physician, Roger H. Applegate, M.D., wrote on August 22, 2001, that:

> Mr. Jack Martin is a patient of mine at the Chemawa Indian Health Center. I have

been his primary care physician since March 2001.[3]  He has had chronic low back pain for about 2 years due to congenital lumbar spinal stenosis; he had L4-5 laminectomy in November of 2000 that was largely ineffective at relieving his pain. Currently he is on several medications for chronic pain including daily long-acting narcotics, non-steroidal anti-inflammatory medicines, muscle-relaxer and antidepressants, which keep his pain at a tolerable level.

Other conditions affecting the patient's ability to work include a left-hip prosthesis placed in 1996, Type 2 Diabetes Mellitus, Hypertension and Depression.

He currently does not have significant neurological impairment; but because of his pain, he would be a poor candidate for any employment involving physical labor. I expect that he pain may continue to improve slightly with physical therapy, weight loss, and exercise, but I feel that chronic pain will always be a problem for him.

As a result of Martin's hip prosthesis and lumbar spinal stenosis, Dr. Applegate felt that Martin is limited to lifting and carrying ten pounds.  Martin is able to stand a maximum of one hour at a time for a total of two hours in an eight-hour day and sit a maximum of two hours at a time for a total of eight hours in an eight-hour day.  Martin should never climb, balance, stoop, crouch, kneel or crawl and should limit his reaching, pushing and pulling.

On February 21, 2002, Martin complained of twinges of low-back pain, similar to that experienced before his back surgery, increased stress due to his lack of income and resulting depression.  In April 2002, Martin was hospitalized for the drainage of a large inguinal abscess on his left  groin.

On August 15, 2003, Martin's attorney followed-up with Dr. Applegate and requested additional information on the restrictions posed by Martin's depression and diabetes.  The attorney stated that as a result of these impairments, Martin has discomfort in his legs, difficulty concentrating and is easily fatigued.  He also indicated that it would be reasonable to assume that

---

[3]The only medical records for Dr. Applegate cover the period from February 21, 2002, to June 20, 2002.

Martin would be unable to work more than three days a month as a result of his condition. Dr. Applegate indicated that these statements are accurate to a reasonable medical probability.

## Vocational Evidence

Patricia C. Lesh attended the hearing as a vocational expert. The ALJ posed the following hypothetical:

> Person 42 years of age, high school education plus the college that the Claimant's testified to, past relevant work as set forth by yourself. Assuming such a person with the following limitations of occasionally lifting ten pounds, frequently ten pounds. Stand and/or walk for two hours out of an eight-hour day, and sit for six hours out of an eight-hour day. This person would also have limited push-pull or only occasional push-pull in the lower extremities. Should be no climbing of ladders, ropes, or scaffolds, and only occasional climbing of ramps or stairs. And there should also be only occasional balancing or stooping.

Transcript at 351-2. Ms. Lesh testified that, based on those limitations, Martin could not perform his past relevant work but that he could work as a sedentary assembler, cashier, food order clerk, and addresser.

When the ALJ included the additional restrictions of no climbing, balancing, stooping, kneeling, crouching and crawling and only occasional reaching, Ms. Lesh opined that the new restrictions would eliminate the job of cashier but that the individual could still work as a sedentary assembler, food order clerk and addresser. However, if the individual was likely to miss more than three days of work per month due to physical problems, he would no longer be employable.

## ALJ Decision

The ALJ determined that Martin had one or more medically determinable "severe" physical requirements but that Martin retained the ability to perform full-time sedentary work. Specifically, the ALJ found that Marion could occasionally lift or carry a maximum of ten pounds, reach with his arms and push or pull with his legs. He could stand or walk for one hour without interruption for

two hours total and sit for two hours without interruption for eight hours total but he was unable to do any postural activities, such as climbing, stooping, crouching, kneeling or crawling. Based on these limitations, the ALJ ruled that Martin was unable to perform his past relevant work but could make vocational adjustment to other work that exists in significant numbers in the economy.

In reaching this conclusion, the ALJ discredited Martin's testimony regarding his physical limitations, relying on Martin's acknowledged independence in daily and social activities only a month after his back surgery in late 2000. He also noted that the written record of disabling pain from Martin and a third party predated his back surgery, which Martin admitted had improved his pain.

The ALJ also rejected Applegate's report that Martin could be expected to miss work three or more days a month. The ALJ relied on the fact that the record did not contain any treatment notes for Dr. Applegate prior to February 2002, despite the fact that Dr. Applegate indicated that he had been treating Martin since March 2001. Additionally, Martin did not seek medical treatment for his alleged hypertension or left hip pain during the relevant period and Martin's treating orthopedic surgeon considered him capable of heavy to medium exertion work in January 2001.

## STANDARD OF REVIEW

The Act provides for payment of Benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 117 S. Ct. 209 (1996). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous

period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A).  An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2) (A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for Benefits because he or she is disabled.  20 C.F.R. §§ 404.1520; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past.  If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and

disability benefits are denied. 20 C.F.R. §§ 404.1520(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995). The claimant is entitled to disability benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f).

When an individual seeks Benefits because of disability, this court must review the case to see if the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Drouin, 966 F.2d at 1257. It is more than a scintilla, but less than a preponderance, of the evidence. Id.; Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Gonzalez, 914 F.2d at 1200. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Gomez, 74 F.3d at 970.

## DISCUSSION

Martin asserts that the ALJ improperly rejected Dr. Applegate's opinion that he would miss three days of work a month and improperly disregarded Martin's diabetes and related symptoms. Based on these errors, the hypothetical given to the vocational expert at the hearing was incomplete.

Even assuming the hypothetical was accurate, the jobs offered by Ms. Lesh required at least frequent reaching, which directly contradicts the ALJ's finding that Martin was limited to occasional reaching. The Commissioner concedes that the jobs listed require frequent reaching and that Martin is unable to perform these jobs. However, the Commissioner asks the court to remand this action to determine if there are any jobs requiring occasional reaching that Martin could perform.

The ALJ specifically rejected Dr. Applegate's opinion that Martin could be expected to miss work three or more days a month due to spine pain. The ALJ explained that:

> Though Dr. Applegate reported caring for the claimant since March 2001, his earliest chart notes of record are in February 2002, a year-and-a half after the claimant had successful spine surgery in November 2000. There is no evidence of record that documents medical care of prescribed narcotic analgesics, or any other medication, in 2001.

Transcript at 22.

Normally, the opinion of a treating physician is given great, even controlling, weight, because "the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993) However, the ALJ need not accept an treating physician opinion that is brief, conclusory, and unsupported by clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)); See also Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999). The ALJ must give "clear and convincing reasons" for rejecting the uncontroverted opinion of a treating physician and "specific, legitimate reasons" for rejecting a controverted opinion of a treating physician. Magallanes, 881 F.2d at 751. See also Lester v. Chater, 81 F.3d 821, 830-32 (9th Cir. 1995).

Here, the record is devoid of any treatment notes for Martin from shortly after his back

surgery in November 2000 to the date of Dr. Applegate's first treatment notes in February 2002. Dr. Applegate's letter on August 22, 2001, indicates that he had been treating Martin since March 2001 and prescribing pain medications. However, in the absence of treatment notes, there is no evidence of the location or severity of the pain suffered by Martin or the type or amount of medication prescribed to Martin during 2001.

The August 2001 letter does not indicate that Martin is unemployable or that his pain would force him to miss work more than three days a month. The letter states that medication keeps Martin's pain at a tolerable level and that Martin would be a "poor candidate for any employment involving physical labor." Transcript at 311. Included with the letter are the work restrictions placed on Martin, which the ALJ adopted in whole. The statement that Martin would not be able to work three days out of every month is not made by Dr. Applegate until his conversation with Martin's attorney in August 2003 and is not supported by any treatment notes.

There is no evidence regarding when Martin became unable to work more than three days in a month. Similarly, there really is no medical evidence supporting Martin's claim that he was unable to work from early 2001 to August 2003, despite apparent ongoing treatment by Dr. Applegate.

The burden of proof ultimately rests with the applicant who is seeking benefits. Nonetheless, the Commissioner has the duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty exists even when the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983), DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). SSR 83-15, which is cited in DeLorme, provides:

> It is vital to review all pertinent information describing the individual's impairment. It is mandatory to attempt to obtain adequate descriptive information from all the

sources * * * that are treating the individual currently, as well as those in the past, in order to properly evaluate the severity of the impairment and, when necessary, to arrive at a realistic assessment of residual functional capacity * * *.

Id., n. l7 (emphasis in original).

The ALJ rejected Dr. Applegate's statement that Martin would probably miss work three days out of a month because of a lack of chart notes for 2001 and early 2002. However, the ALJ did not investigate to determine if chart notes for this period existed and whether they could be provided. In the absence of the records, or the knowledge that such records do not exist, neither the ALJ nor the court can properly determine the extent of Martin's limitations during this relevant time period. This matter should be remanded to allow the ALJ to more fully develop the record for 2001 and early 2002.

Martin also argues that the ALJ improperly ignored Martin's diabetes and the limitations resulting therefrom. In his opinion, the ALJ acknowledged that Martin's disability claim was based, in part, on his diabetes. The only evidence of any limitation resulting from the diabetes is nerve neuropathy in his legs and discomfort in his feet. These limitations were accommodated by the standing, walking and pushing/pulling restrictions set forth in the ALJ's opinion.

The Commissioner concedes error in the determination that Martin is able to perform jobs that require frequent reaching. Because the court finds it appropriate to remand this case to investigate and develop the record for 2001 and early 2002, it is appropriate to allow the Commissioner to correct this error on remand as well.

/ / / / /

CONCLUSION

The Commissioner's findings on Martin's disabilities, considering the record as a whole, are

not supported by substantial evidence. This case should be remanded to the Commissioner for development of the medical record for 2001 and early 2002 and to determine if any sedentary jobs requiring only occasional reaching that Martin can perform exist in significant numbers in the community.

Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **May 18, 2005**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 3rd day of May, 2005.

/s/ Donald C. Ashmanskas
DONALD C. ASHMANSKAS
United States Magistrate Judge